UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAFIQ SABIR,
    Plaintiff,

v.                           Case No. 3:17-cv-749 (VAB)

D.K. WILLIAMS, ET AL.
    Defendants.

**RULING ON MOTION TO REOPEN AND AMEND COMPLAINT**

Rafiq Sabir ("Plaintiff" or "Mr. Sabir") has moved the Court to reopen his case and accept his Amended Complaint. Mot. to Amend, ECF No. 15.

For the following reasons, the motion is **GRANTED**. The Amended Complaint is **DISMISSED** in part but may proceed against the two defendants in their official capacities for injunctive and declaratory relief.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUD**

On May 8, 2017, Mr. Sabir, an inmate currently confined at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), filed a Complaint *pro se* under *Bivens v. Seven Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1871), and 28 U.S.C. §§ 1331 and 1343(a)(3) against Warden D.K. Williams and Federal Bureau of Prisons ("BOP") Director Thomas Kane[1] (together "Defendants") in their official capacities as employees of the BOP for injunctive and declaratory relief. Compl., ECF No. 1. Mr. Sabir claims that Defendants violated his rights under the Free Exercise Clause of the First Amendment to the United States Constitution, the Religious

---

[1] The Court has learned that, as of September 18, 2017, Mark S. Inch is the new Director of the Federal BOP. *About Our Agency*, FEDERAL BUREAU OF PRISONS, http://w-ww.bop.gov/about/agency/bio_dir.jsp (last visited Dec. 8, 2017). Because this change occurred after Mr. Sabir filed his initial complaint, and he is suing the Director only in his official capacity, the Court will direct the Clerk to replace defendant Thomas Kane with defendant Mark S. Inch.

1

Land Use and Institutionalized Persons Act ("RLUIPA"), and the Religious Freedom Restoration Act ("RFRA") by prohibiting him and other Muslim inmates from engaging in group prayer outside the chapel at FCI Danbury. *See id.* at 9. On June 29, 2017, the Court dismissed the Complaint without prejudice because Mr. Sabir failed to pay the required $400 filing fee. *See* ECF Nos. 7, 8.

On July 21, 2017, Mr. Sabir moved to reinstate his Complaint after paying the required filing fee. Mot. to Reopen, ECF No. 9. The Court granted Mr. Sabir's motion, but nevertheless dismissed the Complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief could be granted. Ruling on Mot. to Reopen and Initial Review Order ("Initial Review Order"), ECF No. 11. The Court ruled that the United States Supreme Court's decision in *Bivens*, 403 U.S. at 389, does not authorize suits against federal officials in their official capacities for injunctive or declaratory relief. *See* Initial Review Order at 4-5 (citing *Tyus v. Newton*, 13 Civ. 1486 (SRU), 2015 WL 5306550, *5 (D. Conn. Sep. 10, 2015), *Holliday v. Augustine*, 14 Civ. 855 (SRU), 2015 WL 136325, *3 (D. Conn. Jan. 9, 2015), and *Khan v. United States*, 217 F. Supp.2d 409, 413 (E.D.N.Y. 2003)). Moreover, even if Mr. Sabir had sued Defendants for monetary damages, his claims were nonetheless barred by sovereign immunity. *See id.* at 5 (citing *Pimental v. Deboo*, 411 F. Supp.2d 118, 125-26 (D. Conn. 2006)). Thus, the Court directed the Clerk to close the case.

## II.    REVIEWABILITY OF AMENDED COMPLAINT

On November 30, 2017, Mr. Sabir filed a second motion to re-open his case, ECF No. 15, and attached an Amended Complaint, ECF No. 15-1. Mot. to Amend Compl., ECF No. 15. Rule 15(a) of the Federal Rules of Civil Procedure provides:

> (1) A party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

In the Amended Complaint, Mr. Sabir raises the same three claims against the same two defendants and seeks the same relief: (1) a declaration that Defendants' acts and omissions "violated [his] rights under the Constitution of the United States;" and (2) "[a] preliminary [i]njunction ordering Defendants . . . to rescind Program Statement 5360.09 and the related Institutional Supplement 5360.09 F Section 3.b.2 restricting group prayer to individual prayer or in pairs; and that they allow prayer in groups for the required prayers five times daily wherever [Mr. Sabir] happens to be at the time prayer becomes due." Am. Compl. ¶¶ 41-42. He no longer, however, brings his claim under *Bivens*, 403 U.S. at 389. Instead, he now claims that the Court may provide him with declaratory and injunctive relief under the Administrative [Procedure] Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and 28 U.S.C. § 1331. Am. Compl. ¶ 1.

The APA waives the sovereign immunity of the United States for claims against federal officers that seek non-monetary relief. *Lipscomb v. Hufford*, 14 Civ. 6562 (NSR), 2017 WL 3267732, *6 (S.D.N.Y. Jul. 28, 2017); *see also Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647, 650-52 (2d Cir. 1998) (court should have construed complaint seeking only injunctive relief as arising under APA, not as *Bivens* action); *Garrett v. Ask-Carlson*, No. 15 CIV. 0723 PAC JCF, 2015 WL 5511914, at *2 (S.D.N.Y. Sept. 18, 2015) (prisoner's request for restoration of visitation and commissary

privileges is available remedy under APA); *Berkun v. Terrell*, 12 Civ. 706, 2012 WL 3233897, *3 (E.D.N.Y. Aug. 6, 2012) (injunctive relief available under APA where inmate alleged warden of federal prison violated First Amendment); *Kole v. Lappin*, 551 F. Supp.2d 149, 153 (D. Conn. 2008) (reviewing prisoner's civil rights claims against federal officials in official capacities for injunctive relief). Although the DJA does not provide an independent cause of action or confer subject matter jurisdiction on the Court, it does "provide[] a form of relief for a substantive violation of law." *Schick v. Apker*, 07 Civ. 5775 (SHS) (DF), 2009 WL 2016933, *6 (S.D.N.Y. Mar. 5, 2009); *see also Gowanus Indus. Park, Inc. v. Hess Corp.*, 10 Civ. 5522 (JG) (JO), 2012 WL 273657, *17 (E.D.N.Y. Jan. 31, 2012) (DJA "authorizes a federal district court, in a case of 'actual controversy,' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought'") (quoting § 2201). Because Mr. Sabir is no longer pursuing a *Bivens* action and is now suing federal officials in their official capacities for injunctive and declaratory relief under the APA and DJA, the Court now has jurisdiction under § 1331 to accept and review his amended complaint under 28 U.S.C. § 1915A. Therefore, in the interests of justice, the Court will **GRANT** Mr. Sabir's motion to reopen the case and review his amended complaint.

### III.   FACTUAL ALLEGATIONS IN AMENDED COMPLAINT

On October 9, 2014, Mr. Sabir and other Muslim inmates were allegedly engaging in group prayer in a recreational area of FCI Danbury known as the auditorium. Compl. at ¶ 11. Near the conclusion of the prayer, the Amended Complaint contends that an officer entered the auditorium and confronted members of the group. *Id.* at ¶¶ 12–13. He allegedly informed the inmates that group prayer was not permitted outside the chapel

and warned them that violation of that policy could result in disciplinary action. *Id.* at ¶ 14. Shortly thereafter, Lieutenant North allegedly entered the auditorium. *Id.* at ¶ 15. The two officials allegedly informed the inmates that BOP policy restricted group prayer outside the chapel to two persons and that larger groups of inmates could only perform group prayer inside the chapel, regardless of their religious beliefs. *Id.* at ¶ 20.

The Amended Complaint alleges that members of the group informed North that their policy prohibiting group prayer outside the chapel violated the First Amendment, the RLUIPA, and the RFRA. *Id.* at ¶ 16. They also allegedly informed the officials that their religion required them to pray in groups five times each day, and the chapel was not available to them for all five services. *Id.* at ¶ 21. North allegedly agreed to permit three inmates to pray together in the auditorium at that time but warned that future violations of the policy would result in disciplinary sanctions. *Id.* at ¶ 17.

The chapel at FCI Danbury is allegedly located in the main recreation area and is accessible to inmates only when chapel staff are present. Compl. ¶ 22. Recreation staff, it is alleged, strictly enforce the group prayer policy in other recreational areas of the prison, including the recreation yard, weight room, gymnasium, bathroom, and video and music rooms. *Id.* at ¶¶ 22–23. In some areas, however, including the medical unit, food services area, housing units, and laundry facilities, the group prayer policy is allegedly intermittently tolerated depending on which staff members are present. *Id.* at ¶¶ 24–25. There have allegedly been no recorded incidents where Muslim group prayer interfered with the functioning of FCI Danbury. *Id.* at ¶ 26.

After the two officials allegedly interrupted his group prayer service, Mr. Sabir claims he utilized the administrative remedy procedure available to federal inmates to

5

address his concerns about the policy. Compl. ¶ 27. He allegedly sent written requests and appeals to his counselor, the warden,[2] the Regional Director, and the BOP Central Office, all of which were denied. *Id.* at ¶¶ 31, 34–36. The warden allegedly responded to Mr. Sabir's written request in January 2015 informing him that the policy did not violate his First Amendment rights. *Id.* at ¶ 34. The Regional Director's response allegedly stated that the policy limited group prayers outside the chapel to two persons in order to prevent the "disrupt[ion] and orderly running of the institution" and that permitting larger groups of inmates to pray in the chapel when supervisory staff and space were available was "a reasonable least restrictive alternative." *Id.* at ¶ 35. The Central Office allegedly agreed with the warden's and Regional Director's responses, stating that the institution "provid[ed] [Mr. Sabir] with a reasonable and equitable opportunity to pursue [his] religious beliefs and practices." *Id.* at ¶ 36.

Mr. Sabir allegedly also discussed the issue with his counselor and requested a meeting with the warden. Compl. at ¶ 31. His counselor informed him that the warden wanted his concerns to be addressed in writing before scheduling a meeting. *Id.* Mr. Sabir replied that he had, in fact, sent a written request to the warden. *Id.* FCI Danbury staff never scheduled a meeting between Mr. Sabir and the warden. *Id.* at ¶ 37.

### IV. STANDARD OF REVIEW

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint or any of its parts are "frivolous,

---

[2] It is not clear from this allegation whether Mr. Sabir is referring to defendant Warden Williams or another former warden of FCI Danbury.

6

malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

*Pro se* complaints, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

V.   **DISCUSSION**

Mr. Sabir claims that Defendants' enforcement of the group prayer policy violates his rights under the Free Exercise Clause of the First Amendment, the RFRA, and the RLUIPA. Compl. ¶ 39.

For the following reasons, the Court will permit the First Amendment and RFRA claims to proceed against Defendants for injunctive and declaratory relief.

A.   **FIRST AMENDMENT FREE EXERCISE CLAIM**

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588 (internal quotation marks omitted). Therefore, a prisoner's free exercise claim is "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* (internal quotation marks omitted).

A challenged government action "passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks omitted). In *Salahuddin*, 467 F.3d at 274–75, the

Second Circuit held that, to state a plausible free exercise claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *See also Kole*, 551 F. Supp.2d at 154 (inmate must show that disputed policy substantially burdens sincerely held religious beliefs). "A substantial burden exists where the [government] 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Forde v. Zickefoose*, 612 F. Supp.2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). In evaluating whether the prisoner has made this showing, this Court does not "evaluate the objective reasonableness of the prisoner's belief . . . ." *Ford*, 352 F.3d at 590. Rather, the Court's "scrutiny extends only to whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature." *Id.* (internal quotation marks omitted).

More recently, however, the Second Circuit has expressed doubt as to whether the prisoner must make this threshold showing. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs") (internal quotation marks omitted); *see also Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (declining to apply substantial burden test).

If the prisoner states a plausible free exercise claim, the defendant then bears the limited burden of showing that the challenged conduct is reasonably related to legitimate penological interests. *Salahuddin*, 467 F.3d at 275; *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court examines a prisoner's free exercise claim with deference to the prison administrator. *Forde*, 612 F. Supp. 2d at 180. Thus, "the burden remains with the prisoner

9

to show that these [articulated] concerns were irrational." *Salahuddin*, 467 F.3d at 275 (internal quotation marks omitted).

Construing Mr. Sabir's allegations liberally, the Court concludes that he has stated a plausible claim under the Free Exercise Clause. He alleges that the group prayer policy interferes with his ability to pray with other Muslim inmates five times per day, as required by their religion. Although the question remains whether Defendants' policy is reasonably related to legitimate penological interests, at this stage of the proceeding, the Court will permit Mr. Sabir's claim to proceed.

### B. RFRA CLAIM

The RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability [unless] "application of the burden . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. Congress enacted RFRA "in order to provide very broad protection for religious liberty." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). RFRA places a more demanding burden on the government "to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Id.* at 864 (quoting *Burwell*, 134 S. Ct. at 2780)). The United States Supreme Court has held that RFRA is unconstitutional as applied to state law, *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997), but it continues to apply to the federal government and its officers. *Sossamon v. Texas*, 563 U.S. 277, 281 (2011).

Construing his allegations liberally, Mr. Sabir has stated a plausible claim that the group prayer policy at FCI Danbury substantially burdens his ability to practice his Muslim religion. The Court therefore will permit Mr. Sabir's RFRA claim to proceed against Defendants based on the same allegations in support of the Free Exercise claim.

### C. RLUIPA Claim

Congress enacted RLUIPA as an amendment to RFRA in light of the Supreme Court's decision in *City of Boerne*, 521 U.S. 507, which held that RFRA was unconstitutional as applied to the states. *Holt*, 135 S. Ct. at 860; *see also Hankins v. NYS Dept. of Correctional Services*, 07 Civ. 408 (FJS/GHL), 2008 WL 2019655, *1 n.1 (N.D.N.Y. Mar. 10, 2008) (citing *Prater v. City of Burnside*, 289 F.3d 417, 433 (6th Cir. 2002)). The RLUIPA prohibits a state or local government from taking any action that substantially burdens the religious exercise of a prisoner unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1; *Holt*, 135 S. Ct. at 859. Thus, federal courts have held that RLUIPA "only applies to state and local governments, not a federal prison." *Pineda-Morales v. DeRosa*, 03 Civ. 4297 (JBS), 2005 WL 1607276, *4 (D.N.J. Jul. 6, 2005). *See also Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008).

Because Mr. Sabir is suing federal officials for violating his right to freely exercise his religion, and the Court already permitted his Free Exercise Clause and RFRA claims to proceed, his RLUIPA claim is hereby dismissed.

## IV. CONCLUSION

Mr. Sabir's motion to re-open the case and amend his complaint is **GRANTED**. Mr. Sabir's First Amendment Free Exercise claim and RFRA claim as alleged in the Amended Complaint may proceed against Defendants in their official capacities for injunctive and declaratory relief. The RLUIPA claim is **DISMISSED**.

The Clerk of Court is directed to re-open this case and replace defendant "Thomas Kane" with defendant "Mark S. Inch, Director of Federal Bureau of Prisons." *See supra* note 1.

**Within twenty-one (21) days of this Order**, the Clerk of Court shall prepare a summons form and (a) deliver **three copies** of the summons, this order, the Amended Complaint, ECF No. 15-1, and any attachments to the United States Attorney for the District of Connecticut, at any one of the three offices: 157 Church Street, 23rd Floor, New Haven, Connecticut 06510; 450 Main Street, Room 328, Hartford, Connecticut 06103; or 915 Lafayette Boulevard, Bridgeport, Connecticut 06604; (b) send **two copies** of the summons, this order, the amended complaint, and any attachments by registered or certified mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington, DC, 20530; and (c) send **one copy** of the summons, this order, the amended complaint, and any attachments by registered or certified mail to the Federal Bureau of Prisons, 320 First Street, N.W., Washington, DC, 20534.

Defendants shall file their response to the amended complaint, either an Answer or motion to dismiss, within **sixty (60) days** from the date the documents listed in this Order are mailed to them. If they choose to file an Answer, they shall admit or

deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

Discovery, under Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

**SO ORDERED** this 19th day of December, 2017, at Bridgeport, Connecticut.

       /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE