UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAFIQ SABIR and JAMES J. CONYERS, | : | Case No. |
| | : | 3:17-CV-00749 (VAB) |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| D.K. WILLIAMS, in her individual capacity and her official capacity as warden of FCI Danbury; HERMAN QUAY, in his individual capacity; and HUGH J. HURWITZ in his official capacity as acting director of the Federal Bureau of Prisons, | : : : : : : | June 1, 2018 |
| | : | |
| Defendants. | : | |

## SECOND AMENDED COMPLAINT

Plaintiffs Dr. Rafiq Sabir and Mr. James J. Conyers ("Plaintiffs"), by and through the undersigned counsel, pursuant to this Court's Orders of December 19, 2017 (ECF No. 16) and May 14, 2018 (ECF No. 34), file this Second Amended Complaint against Defendants and allege as follows:

## PRELIMINARY STATEMENT

1.  A central tenet of Islam is the obligation for adult Muslims to pray—perform *salah*—five times each day.  These prayers, which take place during specific parts of the day (i.e., dawn, early afternoon, late afternoon, post-sunset, and evening) are a fundamental aspect of the Islamic faith.  Performing *salah* is one of the Five Pillars of Islam; for the vast majority of Muslims it is considered a foundation of their religious life and identity.  Many Muslims also believe that it is vital to perform *salah* in a group setting if there are other Muslims in the vicinity during prayer times.

2. Plaintiffs are incarcerated persons currently housed at Federal Correctional Institution Danbury ("FCI Danbury"), a low-security prison. Plaintiffs are Muslim and share the sincerely-held belief that their religion requires them to engage in daily congregational prayer whenever possible. Yet, Defendants have, without legitimate justification, imposed a policy that substantially restricts and effectively bars Plaintiffs—and other Muslim incarcerated persons housed at FCI Danbury—from engaging in this important religious practice.

3. In March 2014, Maureen Baird, who was at that time the warden of FCI Danbury, issued a policy that categorically limited the ability of Plaintiffs and other Muslim incarcerated persons to engage in congregational prayer. *See* FCI Danbury Institution Supplement no. DAN 5360.09F § 3(b)(2) (Mar. 28, 2014) (the "Policy"), attached hereto as Attachment A. Subsequent wardens, including Defendants Herman Quay and D.K. Williams, kept the Policy in effect. Under the terms of the Policy, prayer in groups of more than two is banned in all parts of the FCI Danbury complex except for the chapel facility. Given that incarcerated persons have very limited access to the chapel facility, the Policy effectively bans congregational prayer in FCI Danbury, making it impossible for Plaintiffs and other Muslim incarcerated persons to perform *salah* in accordance with their sincerely-held religious beliefs.

4. Defendants have failed to provide any valid security or other penological interest to support the Policy. The Federal Bureau of Prisons ("FBOP") has no formal policy banning congregational prayer in its facilities, and both Plaintiffs have been housed in other FBOP facilities that allowed incarcerated persons to engage in group prayer openly and without restriction. In fact, even after then-warden Baird enacted the Policy, certain incarcerated persons at FCI Danbury have at times been allowed to engage in congregational prayer when not in the

chapel facility. Plaintiffs are not aware of any security incidents or concerns that have arisen as a result of any of these congregational prayers.

5. The Policy, however, remains in effect and many corrections officers and other prison officials at FCI Danbury do strictly enforce its terms. For example, in October 2014, Plaintiff Sabir was engaged in congregational prayer with several other incarcerated persons in FCI Danbury's auditorium facility. A corrections officer dispersed the group and warned Plaintiff Sabir that he would face discipline if he violated the Policy and again engaged in congregational prayer. Similarly, in April 2018 another group of Muslim incarcerated persons were threatened with discipline for engaging in congregational prayer in violation of the Policy.

6. As a result of these and other actions Plaintiffs and other Muslim incarcerated persons at FCI Danbury are unable to adhere to their sincerely-held religious beliefs and engage in daily congregational prayer. Defendants' generalized prohibition of congregational prayer imposes a substantial burden on Plaintiffs' exercise of religion. Because the Policy neither furthers a compelling governmental interest nor represents the least restrictive means of furthering a compelling governmental interest, it violates Plaintiffs' rights under the First Amendment of the United States Constitution and the Religious Freedom Restoration Act ("RFRA").

7. Plaintiffs bring this action seeking a court order enjoining Defendants' effective ban on congregational prayer at FCI Danbury and further enforcement of the Policy. Defendants have acted and continue to act under color of law to deprive Plaintiffs of their statutory and constitutional rights. Plaintiffs are suffering irreparable injury and will continue to suffer a real and immediate threat of irreparable injury as a result of the existence, operation, and implementation of the challenged Policy. Plaintiffs also seek a declaratory judgment that the

Policy violates their statutory and constitutional religious freedom rights, and damages, an award of costs and attorneys' fees, and such other and further relief as this court deems just and proper.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343.

9. This Court has jurisdiction to issue declaratory relief pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202. Injunctive relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

10. As detailed below, Plaintiffs have exhausted administrative remedies pursuant to 28 U.S.C. § 2675(a) and 42 U.S.C. § 1997e(b).

11. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

12. Plaintiff Dr. Rafiq Sabir is a practicing Muslim and has identified as a member of the Sunni Muslim community for nearly 40 years. He is and was, at all times relevant hereto, an incarcerated person in the custody of FBOP. Dr. Sabir was transferred to FCI Danbury in July 2014 and since that time has been confined at FCI Danbury, excluding from approximately March 15, 2015 to July 2016 when he was transported to and confined in the Federal Medical Center Devens ("FMC Devens") and Metropolitan Detention Center Brooklyn, for surgery and medical treatment during his recovery from surgery.

13. Plaintiff James Conyers is a practicing Muslim who converted to Islam approximately 21 years ago. He is and was, at all times relevant hereto, an incarcerated person in the custody of FBOP. Mr. Conyers was transferred to FCI Danbury in September 2016 and has been confined at that facility since that time.

14.     Defendant D.K. Williams is the current Warden of FCI Danbury and is legally responsible for the operation of FCI Danbury and for the welfare of all incarcerated persons in that prison. She is sued in her individual and official capacities.

15.     Defendant Herman Quay was the Warden of FCI Danbury from July 2014 until December 2015. He is sued in his individual capacity.

16.     Defendant Hugh J. Hurwitz[1] is the current Acting Director of FBOP and is legally responsible for the operation of all prisons within FBOP and for the welfare of all its incarcerated persons throughout FBOP. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

A.   **The Importance of Congregational Prayer**

17.     Within Islam there are a number of foundational tenets, known as the Five Pillars, to which all members of the faith are expected to adhere. One of those tenets is daily prayer or *salah*. With extremely limited exceptions, most Muslims who have reached the age of puberty are expected to pray five times each day.

18.     The five daily prayer times are measured according to the movement of the sun: (i) pre-dawn/sunrise (*fajr*), (ii) early afternoon (*dhuhr*), (iii) late afternoon (*asr*), (iv) post-sunset (*maghrib*), and (iv) night (*isha*). During the month of Ramadan, an additional nightly prayer is required.

19.     The most important prayer of the week is the Friday early afternoon prayer (*Ju'muah* service), which many Muslims believe must be prayed in congregation. As for the other daily prayers, many Muslims sincerely believe that observing prayer in congregation is also mandatory whenever possible (i.e., when they are in the presence or vicinity of other Muslims

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Defendant Hurwitz is substituted in his official capacity for former Director of the FBOP Thomas Kane.

5

during prayer times), as it has more spiritual and social benefits than individual observance. For these believers, engaging in congregational prayer with the maximum number of practicing Muslims possible is required because such prayer multiplies the blessings and utility of prayer.

20. When Muslims engage in congregational prayer, participants stand in straight rows behind the person who leads the prayer, known as the *imam*.

21. When *salah* is performed in a group setting, there is a congregational prayer that takes approximately five minutes to perform. There are additional individual supplementary prayers made either immediately before or after the congregational prayer that generally take an additional two to five minutes.

22. The prayers follow a prescribed sequence of actions and words and the congregants do not converse among themselves during the prayers. Often, a large portion of the communal prayers are silent. The spoken portions of prayers can be performed in a manner that does not disturb others in the nearby vicinity.

23. For Plaintiffs Sabir and Conyers—as well as many other Muslim incarcerated persons housed at FCI Danbury—it is their sincerely-held religious belief that if two or more Muslims are together at a time of required prayer, they must pray together behind one prayer leader, and that it is not permissible to break up into smaller groups.

**B.  FCI Danbury's Restrictions on Congregational Prayer**

24. FBOP has no formal policy that categorically bans congregational prayer in its facilities. Rather, the warden of each correctional facility within FBOP is tasked with determining whether any specific religious practice jeopardizes the facility's safety and security.

6

If so, the warden is authorized to temporarily restrict the practice and/or identify an alternative practice.[2]

25. A number of FBOP facilities permit incarcerated persons to engage in congregational prayer openly and without restriction. When confined at FMC Devens, Plaintiff Sabir was permitted to engage in congregational prayer at locations throughout that facility. He is not aware of any situations in which Muslim congregational prayer interfered with or disturbed the orderly function at FMC Devens.

26. Likewise, Plaintiff Conyers has been housed in a number of FBOP facilities, including Federal Medical Center Butner, Federal Prison Camp Montgomery, and both the Federal Correctional Institution and the Federal Prison Camp at Fort Dix. In those facilities, he was generally permitted to engage in daily congregational prayer. He is not aware of any situations in which Muslim congregational prayer interfered with or disturbed the orderly function at those facilities.

27. FBOP's Danbury facility houses three separate institutions: (i) Federal Prison Camp Danbury, a minimum-security prison housing approximately 194 incarcerated persons; (ii) Federal Satellite Low Danbury, a low-security all-female facility housing approximately 115 persons; and (iii) FCI Danbury, a low-security male FBOP facility housing approximately 836

---

[2] FBOP policy states that "The Warden may periodically review religious practices to determine whether a religious practice remains within the scope of best correctional practice and religious accommodation. If upon review, the Warden determines that a religious practice jeopardizes institution safety, security and good order, the practice may be temporarily restricted." FBOP Program Statement P5360.009(7)(a) (Dec. 31, 2004). The policy also provides "[w]hen necessary, Wardens may identify alternative practices and implement the least restrictive alternative consistent with the security and orderly running of Bureau institutions. *Id.* P5360.009(7)(d).

incarcerated persons.[3]  Upon information and belief, approximately 150 of the persons incarcerated at FCI Danbury currently identify as Muslim.

28. As a low-security facility, incarcerated persons in FCI Danbury have a high degree of personal autonomy.  Many of the housing units do not have locks on the doors of the living quarters—including G-Unit, where Plaintiff Conyers is housed, and H-unit, where Plaintiff Sabir is housed—and even in those units where locks are available, they are rarely used.  Incarcerated persons at FCI Danbury routinely gather in large groups for prison-approved activities such as inmate-led fitness classes, card games, and sports, some of which can involve over 20 incarcerated persons at a time.

29. The primary recreation area of FCI Danbury includes a recreation yard, weight room, gymnasium, bathroom, wellness room, hobbycraft room, music room, video viewing area with game tables, the chapel facility, and several offices (together, "the recreation area").  Other areas accessible to incarcerated persons include the medical area, food services, education and housing facilities, laundry, the barber shop, and the prison work program area (together, the "other areas").

30. On March 24, 2014, then-warden Maureen Baird enacted the Policy, which severely restricted the ability of incarcerated persons to engage in congregational prayer.  The Policy specifically provides:

> Congregate Prayer, outside of the Chapel, for all faith groups [*sic*] will follow the following guidelines:
>
> a) Must get the approval of the location to pray from work supervisor, program supervisor, etc.

---

[3] See FBOP Population Statistics, https://www.bop.gov/about/statistics/population_statistics.jsp (select "Danbury" from "Facility" drop-down menu and press "Generate Report" button) (last visited June 1, 2018).

>   b) Prayer individually or in pairs is permitted, however, group prayer of 3 or more is restricted to the Chapel.
>   c) Prayers can be made at work detail sites, school, or units during break times.
>   d) Prayer rug or clean towel is permitted to cover the floor.
>   e) In cases of institutional emergency or instructed by staff [sic] prayers will be terminated.

FCI Danbury Institution Supplement DAN 5360.09F (Mar. 28, 2014).

31. The Policy prohibits congregational prayer in most parts of the FCI Danbury complex even though incarcerated persons are allowed to engage in other group activities in those spaces. FCI Danbury officials authorize many group activities in which large numbers of incarcerated persons gather. For example, card games in the recreation area often involve six to seven players, with another six to seven spectators watching the games. Group sports are permitted, including basketball, indoor hockey, soccer, volleyball, and softball. These games often involve between 10 and 20 incarcerated persons. Incarcerated persons at FCI Danbury are also regularly authorized to participate in and lead fitness classes, which can include as many as 20 individuals.

32. Although the Policy permits congregational prayer in FCI Danbury's chapel facility, incarcerated persons have sporadic access to the chapel facility. The chapel facility is only open when chapel staff are present and the facility's rooms are not already occupied or reserved by other individuals. While FCI Danbury officials have reserved a room in the chapel facility for the weekly *Ju'muah* service, it is frequently unavailable during other prayer times throughout the week. In addition, Muslim incarcerated persons are often required to be in other parts of the prison at prayer time for work duties, classes, medical reasons, or other reasons.

33. Defendants have offered no meaningful justification for the Policy. Plaintiffs are not aware of any incidents of congregational prayer interfering with or disturbing the orderly function of FCI Danbury notwithstanding the fact that Muslim incarcerated persons engage in

congregational prayer (i) for the weekly *Ju'muah* service, (ii) in the chapel facility when it is available, and (iii) in other areas of FCI Danbury where the Policy is inconsistently enforced. *See* Section D, *infra*.

C. **Defendants' Enforcement of the Policy Prevents Plaintiffs from Practicing their Faith Consistent with Their Sincerely-Held Religious Beliefs**

34. Defendants' enforcement of the Policy has infringed on Plaintiffs and other Muslim incarcerated persons' ability to engage in congregational prayer.

35. For example, in October 2014, Plaintiff Sabir was engaged in congregational prayer with two other incarcerated persons in the auditorium at FCI Danbury.

36. At all times before, during, and after the group prayer, Dr. Sabir and his fellow incarcerated persons conducted themselves peacefully, respectfully, and cooperatively, and they did not interfere with other incarcerated persons or the functioning and operation of FCI Danbury.

37. Towards the conclusion of the group prayer and while Dr. Sabir performed additional individual prayers, certain incarcerated persons who had participated in the congregational prayer were approached by a corrections officer.

38. The corrections officer informed the incarcerated persons that they had been observed by surveillance cameras performing congregational prayer and that such activity is only permitted in the chapel facility. The corrections officer also informed the incarcerated persons that violation of this rule may result in disciplinary action.

39. Following that exchange, Dr. Sabir and another corrections officer joined the conversation. The corrections officer informed the group that the Policy restricted congregational prayer to two people throughout the FCI Danbury complex, unless inside the chapel facility.

40. Dr. Sabir and the other incarcerated persons informed the corrections officers that their religion demanded they engage in congregational prayer five times a day and that the chapel facility was not available for them during all those times. In response, the corrections officers reiterated the terms of the Policy.

41. Even though it is Dr. Sabir's sincerely-held religious belief that he should participate in congregational prayer whenever possible, Defendants' enforcement of the Policy prevents him from doing so. As a result of the October 2014 incident, he is fearful that if he engages in daily congregational prayer he will be subjected to discipline and sanction.

42. Defendants' enforcement of the Policy also prevents Plaintiff Conyers from engaging in daily congregational prayer as mandated by his sincerely-held religious beliefs.

43. Since coming to FCI Danbury, Mr. Conyers has been repeatedly informed that congregational prayer outside of the chapel facility is not permitted. Rather than risk discipline for engaging in congregational prayer—even though the practice is mandated by his religious beliefs—Mr. Conyers has refrained from engaging in congregational prayer on many occasions.

44. Because of their inability to perform daily prayer in congregation, Plaintiffs have been forced to choose between acting in accordance with their sincere religious beliefs and facing discipline at the prison, including possible solitary confinement and loss of other privileges. This choice has caused the Plaintiffs mental and physical distress.

45. Defendants continue to enforce the Policy at FCI Danbury. Upon information and belief, in April 2018, FCI Danbury staff approached several Muslim incarcerated persons who were engaged in congregational prayer and informed them that they would be issued disciplinary write-ups and face other sanctions if they continued to engage in congregational prayer.

46. Defendants' enforcement of the Policy has a chilling effect on the ability of Plaintiffs and other Muslim incarcerated persons to practice their faith in a manner consistent with their sincerely-held religious beliefs. In spring 2017, officials at FCI Danbury circulated a flyer to the incarcerated persons which cited to the Policy and stated that "group prayer of 3 or more is restricted to the Chapel" and "Staff Will be Enforcing This Policy." Upon information and belief, in recent months at least two other Muslim incarcerated persons at FCI Danbury have filed grievances against the Policy and its restrictions on congregational prayer.

**D. Defendants' Inconsistent Application of the Policy Demonstrates that Congregational Prayer Does Not Jeopardize the Safety or Security of FCI Danbury**

47. The Policy is not applied equally throughout FCI Danbury, depending on which members of staff are on duty at the time and the area of the prison. Within the recreation area, the Policy is generally strictly enforced by FCI Danbury staff members. Throughout the other areas, the Policy is applied inconsistently, often depending on which staff members are present at the time. Some counselors, case managers, and unit managers strictly enforce the Policy in these areas, while others turn a blind eye.

48. For example, in some housing units, corrections officers allow Muslim incarcerated persons to pray in congregation during morning prayers. Similarly, Muslim incarcerated persons have been permitted to engage in congregational prayer in an outdoor space adjacent to the chapel facility.

49. Plaintiffs are not aware of any security issues occurring during these congregational prayer sessions. Because incarcerated persons who identify as Muslim are often spread out in different parts of the FCI Danbury complex, the groups are often small (usually around three to six people). The prayers usually last five minutes or less.

50.     The lack of clarity about Defendant's enforcement of the Policy continues to chill Plaintiffs and other Muslim incarcerated persons from practicing in a manner consistent with their sincerely-held religious beliefs.  Plaintiffs can never be assured of their ability to engage in daily congregational prayer, even though the actions of FCI Danbury staff make clear that the practice does not jeopardize the facility's safety and security.

**E.     Plaintiffs Have Exhausted All Administrative Remedies**

51.     Plaintiff Sabir fully exhausted his administrative remedies.  The documents reflecting this exhaustion are attached hereto as Attachment B.

52.     During the grievance process, Dr. Sabir informed FCI Danbury and other FBOP officials that the Policy violates his sincerely-held religious beliefs, and that FCI Danbury could allow him and other Muslim incarcerated persons to engage in daily congregational prayer without jeopardizing the facility's safety.  FCI Danbury and FBOP officials denied his grievance and the subsequent appeals, and failed to provide any meaningful justification for the Policy.

53.     Plaintiff Conyers has also fully exhausted his administrative remedies.  The documents reflecting this exhaustion are attached hereto as Attachment C.

54.     During the grievance process, Mr. Conyers informed FCI Danbury and other FBOP officials that the Policy violates his sincerely-held religious beliefs, and that FCI Danbury could allow him and other Muslim incarcerated persons to engage in daily congregational prayer without jeopardizing the facility's safety.  FCI Danbury and FBOP officials denied his grievance and the subsequent appeals, and failed to provide any meaningful justification for the Policy.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**(Violation of First Amendment Free Exercise of Religion)**

55.     Plaintiffs repeat and reallege the allegations contained in the prior paragraphs.

56. The First Amendment protects the rights of all persons to freely exercise their religious beliefs.

57. By implementing and arbitrarily enforcing the Policy and refusing to allow Plaintiffs to participate in daily congregational prayer as required by their sincerely-held religious beliefs, Defendants Williams and Hurwitz, acting under color of law and their authority as Warden of FCI Danbury and Acting Director of the FBOP, respectively, and Herman Quay, acting under color of law in his individual capacity, intentionally or recklessly violated Plaintiffs' right to free exercise of religion guaranteed to them under the First Amendment to the United States Constitution and substantially burdened Plaintiffs' sincerely held religious beliefs.

## SECOND CAUSE OF ACTION
**(Violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.)**

58. Plaintiffs repeat and reallege the allegations contained in the prior paragraphs.

59. By implementing and arbitrarily enforcing the Policy and refusing to allow Plaintiffs to participate in daily congregational prayer as required by their sincerely-held religious beliefs, Defendants Williams and Quay, acting under color of law and their authority as Wardens of FCI Danbury, and Defendant Hurwitz, acting under color of law and his authority as Acting Director of the FBOP, have imposed and continue to impose substantial burdens on the religious exercise of Plaintiffs in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.

60. These substantial burdens are not imposed in furtherance of any compelling governmental interest nor are they the least restrictive means of furthering any governmental interest.

## DEMAND FOR JURY TRIAL

Plaintiffs request a trial by jury for all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1)      Declare that the Policy violates the First Amendment of the United States Constitution and the Religious Freedom Restoration Act on its face and as applied to the Plaintiffs;

2)      Enter an injunction ordering Defendants to permit congregational prayer at FCI Danbury and to refrain from enforcing any policy that prohibits such practice;

3)      Award Plaintiffs compensatory damages against Defendants Williams and Quay in their individual capacities, in an amount to be proved at trial;

4)      Award Plaintiffs nominal and punitive damages against all Defendants in an amount to be proved at trial;

5)      Award Plaintiffs the costs of this action, including reasonable attorneys' fees; and

6)      Award any other relief the Court deems just and equitable.

Dated: June 1, 2018

                                  Respectfully submitted,

                             By:        /s/ Matthew W. Callahan
                                Johnathan J. Smith (No. phv09573)
                                Matthew W. Callahan (No. phv09574)
                                MUSLIM ADVOCATES
                                P.O. Box 66408
                                Washington, DC 20035
                                Tel.: (202) 897-2622
                                Fax: (202) 508-1007
                                Email: johnathan@muslimadvocates.org
                                            matthew@muslimadvocates.org

                                -and-

                                Renee C. Redman (No. ct16604)
                                LAW OFFICE OF RENEE C. REDMAN LLC
                                110 Whitney Avenue
                                New Haven, Connecticut 06510
                                Tel.: (475) 238-6671
                                Fax: (475) 238-6679
                                Email:  renee@reneeredmanlaw.com

                                *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2018, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will provide notice to all defendants who have entered an appearance in the case. I certify that I notified the following defendants by mail:

Herman Quay
Warden
Metropolitan Detention Center Brooklyn
80 29th St.
Brooklyn, NY 11232

D.K. Williams (individual capacity)
Warden
FCI Danbury
Route 37
Danbury, CT 06811

                                                      */s/ Matthew W. Callahan*
                                                        Matthew W. Callahan