UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAFIQ SABIR, and JAMES J. CONYERS., <br><br> Plaintiffs, <br><br> v. <br><br> D.K. WILLIAMS, in her individual capacity and her oficial capacity as warden of FCI Danbury; HERMAN QUAY, in his individual capacity; and HUGH J. HURWITZ, in his oficial capacity as acting director of the Federal Bureau of Prisons, <br><br> Defendants. | Case No. 3:17-CV-00749 (VAB) <br><br><br> November 2, 2018 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS......................................................................................................2

STANDARD OF REVIEW ON MOTION TO DISMISS .....................................................3

ARGUMENT............................................................................................................................4

I.    PLAINTIFFS' OFFICIAL CAPACITY CLAIMS AGAINST THE DEFENDANTS SHOULD NOT BE DISMISSED. ........................................................4

II.   PLAINTIFFS ARE ENTITLED TO DAMAGES UNDER RFRA. ................................7

III.  RESOLUTION OF DEFENDANTS' QUALIFIED IMMUNITY DEFENSE IS PREMATURE................................................................................................................7

IV.  DEFENDANTS WILLIAMS AND QUAY ARE NOT PROTECTED BY QUALIFIED IMMUNITY. ............................................................................................8

    A.    Defendants Violated Plaintiffs' Clearly Established Constitutional and Statutory Rights ...............................................................................................8

    B.    Wardens' Conduct Was Not Objectively Reasonable .........................................12

    C.    Plaintiffs' Allegations More Than Plausibly Support the Inference That Defendants Quay and Williams Were Personally Involved................................13

CONCLUSION......................................................................................................................15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allah v. Annucci*, No. 16-cv-1841, 2017 WL 3972517 (S.D.N.Y. Sept. 7, 2017) ........................14

*Allah v. Annucci*, No. 16-cv-1841, 2018 WL 4571679 (S.D.N.Y. Sept. 24, 2018)......................14

*Anderson v. Creighton*, 483 U.S. 635 (1987)..................................................................................8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................4

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388
 (1971) ........................................................................................................................2, 7

*Brooks v. Pataki*, 137 S. Ct. 380 (2016).......................................................................................13

*Chatin v. Coombe*, 186 F.3d 82 (2d Cir. 1999) .............................................................................10

*City of Syracuse v. Onondaga Cty.*, 464 F.3d 297 (2d Cir. 2006).............................................8, 13

*Colon v. Coughlin,* 58 F.3d 865 (2d Cir. 1995).............................................................................13

*Coollick v. Hughes*, 699 F.3d 211 (2d Cir. 2012)..........................................................................15

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007).............................................................4

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) ........................................................14

*Hammock v. Pierce*, No. 15-CV-09052, 2018 WL 2108244 (S.D.N.Y. May 7,
 2018)...............................................................................................................................10

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982)....................................................................................8

*Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014) .............................................................................5

*Holt v. Hobbs*, 135 S. Ct. 853 (2015)............................................................................................10

*Johnson v. Killian*, No. 07-cv-6641, 2013 WL 103166 (S.D.N.Y. Jan. 9, 2013).........................11

*Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246 (2d Cir. 2001).......................................9

*King v. Simpson*, 189 F.3d 284 (2d Cir. 1999) ...............................................................................7

*LaBounty v. Coughlin*, 137 F.3d 68 (2d Cir. 1998) ........................................................................9

*Lindh v. Warden, Fed. Corr. Inst., Terre Haute*, No. 09-cv-00215, 2013 WL 139699 (S.D. Ind. Jan. 11, 2013) ................................................................................ 10

*McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004) ............................................................... 4

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ...................................................................... 7

*Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2016 WL 6584482 (S.D.N.Y. Nov. 7, 2016) ...................................................................................................... 5

*Nagle v. Marron*, 663 F.3d 100 (2d Cir. 2011) ......................................................................... 12

*Sabir v. Williams*, No. 17-CV-749, 2017 WL 6514694 (D. Conn. Dec. 19, 2017) ............... *passim*

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ........................................................... 8, 9, 10

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) .................................. 8, 13

*Shabazz v. Coughlin*, 852 F.2d 697 (2d Cir. 1988) ................................................................... 11

*Smith v. Artus*, No. 9:07-CV-1150, 2010 WL 3910086 (N.D.N.Y. Sept. 30, 2010), *vacated in part on other grounds*, 522 F. App'x 82 (2d Cir. 2013) ...................................... 11

*Sweeper v. Taylor*, No. 06-cv-379, 2009 WL 815911 (N.D.N.Y. March 27, 2009) ................. 11

*Tanvir v. Tanzin*, 894 F.3d 449 (2d Cir. 2018) ................................................................... 2, 3, 7

*Vega v. Lantz*, No. 04-cv-1215, 2009 WL 3157586 (D. Conn. Sept. 25, 2009) ....................... 11

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ........................................................................... 12

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) ........................................................................... 7

*Warren v. Pataki*, 823 F.3d 125 (2d Cir. 2016) ........................................................................ 13

*Williams v. Leonard*, No. 11-CV-1158, 2013 WL 5466191 (N.D.N.Y. Sept. 30, 2013) ................................................................................................................................ 10

*Withrow v. Bartlett*, 15 F. Supp. 2d 292 (W.D.N.Y. 1998) ...................................................... 11

*Wright v. Stallone*, No. 09-cv-0487, 2018 WL 671256 (N.D.N.Y. Jan. 31, 2018) .............. 12, 13

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 3

Religious Freedom Restoration Act ................................................................................... *passim*

Plaintiffs Dr. Rafiq Sabir and Mr. James J. Conyers ("Plaintiffs") submit this Memorandum of Law in opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Motion").

## **INTRODUCTION**

In violation of Plaintiffs' sincerely held religious belief that adult Muslims must pray in congregation five times each day, Defendants have implemented and arbitrarily enforced a policy that effectively bans them from doing so for many of their daily prayers. In the Second Amended Complaint, Plaintiffs have sufficiently pleaded claims that Defendants, by implementing and arbitrarily enforcing the policy effectively banning congregate prayer outside of the prison chapel, have (i) violated Plaintiffs' right to free exercise of their religion guaranteed to them under the First Amendment to the United States Constitution (the "Free Exercise Clause") and substantially burdened their sincerely held religious beliefs, and (ii) imposed substantial burdens on Plaintiffs' religious exercise in violation of the Religious Freedom Restoration Act ("RFRA").

Defendants' motion to dismiss the Second Amended Complaint is without merit and should be denied in all respects. First, the Defendants completely ignore this Court's thorough and well-reasoned decision permitting Dr. Sabir's claims under the Free Exercise Clause and RFRA to proceed against Defendants D.K. Williams and Hugh J. Hurwitz, in their official capacities.[1] *See Sabir v. Williams*, No. 17-CV-749, 2017 WL 6514694, at *2 (D. Conn. Dec. 19, 2017). The Defendants offer no reason—and none exists—why the Court's previous decision should be disregarded.

---

1. While Mark S. Inch was the Director of the Federal Bureau of Prisons at the time of this Court's decision, as Dr. Sabir sued the director in his official capacity, it was appropriate to replace him with current Director of the Federal Bureau of Prisons, Hugh J. Hurwitz.

Second, RFRA permits Plaintiffs to seek money damages against Defendants Herman Quay and D.K. Williams (together, the "Wardens") in their individual capacities. *See Tanvir v. Tanzin*, 894 F.3d 449, 463 (2d Cir. 2018) (holding that "RFRA authorizes the recovery of money damages against federal officers sued in their individual capacities"). Plaintiffs need not and do not resort to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny to seek damages against the Wardens.

Finally, the Wardens are not entitled to qualified immunity. Plaintiffs have properly alleged the personal involvement of the Wardens in actions that violated Plaintiffs' clearly established constitutional and statutory rights.

## STATEMENT OF FACTS

Plaintiffs Dr. Rafiq Sabir and Mr. James J. Conyers are Muslim inmates currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), a low-security prison. (Second Amend. Compl. ("Compl.") ¶ 2.) A fundamental tenet of Plaintiffs' religion is the obligation to perform *salah*, or pray, at designated times five times each day with other practicing Muslims. (*See id*. ¶ 1.) Performing *salah* in a group setting is vital to the Muslim faith because it provides more spiritual and social benefits than can be accomplished through individual observance. (*Id*. ¶ 19.) Increasing the number of practicing Muslims engaging in congregational prayer multiplies the blessings and utility of prayer. (*Id*.) For Plaintiffs, as well as for many other Muslims incarcerated at FCI Danbury, it is their sincerely held religious belief that if more than two Muslims are in the same vicinity at the time *salah* is performed, they must congregate for prayer led by one prayer leader. (*Id*. ¶¶ 1, 19, and 23.) Notwithstanding Plaintiffs' sincerely held beliefs, the Defendants have, without legitimate justification, imposed a policy that substantially restricts and effectively bars Plaintiffs from engaging in this fundamental religious practice. (*Id*. ¶¶ 3-5.)

The Bureau of Prisons has no system-wide ban on prayer in groups greater than two, and other federal prison facilities permit such prayer, including facilities where Plaintiffs have previously been housed. (*Id.* ¶ 4.) FCI Danbury is a low-security federal prison in which most cells do not even have locks. (*Id.* ¶ 28.) Incarcerated persons at FCI Danbury routinely gather in large groups for prison-approved activities such as inmate-led fitness classes, card games, and sports, some of which can involve over 20 incarcerated persons at a time. (*Id.* ¶¶ 28, 31.) The prison has no history of security incidents with group prayer. (*Id.* ¶ 4.)

Nonetheless, pursuant to the policy implemented and arbitrarily enforced by the Defendants, prayer in groups of more than two is banned in all parts of the FCI Danbury facility, other than the chapel. *See* FCI Danbury Institution Supplement no. DAN 5360.09F § 3(b)(2) (Mar. 28, 2014) (the "Policy"). (*Id.*) Inmates have very limited access to the chapel, which makes it impossible for Plaintiffs to adhere to a central tenet of their religion. (Compl. ¶¶ 1, 3, 6.) The Warden and other officials at FCI Danbury inconsistently enforce the Policy implementing this effective ban on group prayer. (*Id.* ¶¶ 3-5.)

On December 19, 2017, this Court granted Dr. Sabir's November 30, 2017 motion to reopen the case and permitted Dr. Sabir to proceed with his Free Exercise Clause and RFRA claims. *See* ECF No. 16 at 3-4; *Sabir*, 2017 WL 6514694, at *2 (D. Conn. Dec. 19, 2017). On June 1, 2018, Plaintiffs filed the Second Amended Complaint (ECF No. 36), adding Mr. Conyers as a Plaintiff and bolstering the facts asserted in Dr. Sabir's original complaint. On September 14, 2018, Defendants filed the Motion (ECF No. 54).

## STANDARD OF REVIEW ON MOTION TO DISMISS

When considering a Rule 12(b)(6) motion to dismiss, the Court "accept[s] as true the factual allegations in the complaint and draw[s] all reasonable inferences in the favor of the plaintiffs." *Tanvir*, 894 F.3d at 458. The factual allegations made in the complaint "must be

3

enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This standard requires "enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint should not be dismissed "unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.'" *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, assuming the truth of the facts alleged in the Second Amended Complaint, Plaintiffs have stated plausible claims against Defendants that rise above the level of speculation. Defendants' motion should be denied.

## ARGUMENT

### I.  PLAINTIFFS' OFFICIAL CAPACITY CLAIMS AGAINST THE DEFENDANTS SHOULD NOT BE DISMISSED.[2]

On December 19, 2017, this Court issued a thorough and well-reasoned opinion permitting Dr. Sabir to reopen this case and proceed with the claims asserted in his Amended Complaint against Defendants Williams and Hurwitz for declaratory and injunctive relief. After reviewing the factual allegations in Dr. Sabir's Amended Complaint, this Court held that Dr. Sabir: (i) "stated a plausible claim under the Free Exercise Clause" and (ii) "stated a plausible claim that the group prayer policy at FCI Danbury substantially burdens his ability to practice his Muslim religion," and accordingly, Dr. Sabir's RFRA claim could "proceed against Defendants based on the same allegations of the Free Exercise claim." *Sabir*, 2017 WL 6514694, at *4-5.

---

2.  Plaintiffs do not assert a damages claim against the United States or against any of the Defendants in their official capacities.

4

The factual allegations that this Court analyzed in its earlier decision were strengthened and corroborated in the Second Amended Complaint, which adds Mr. Conyers' grievances under the same Policy and augments the allegations originally set forth in Dr. Sabir's Amended Complaint. Because the Court's previous decision analyzed the same claims under the same standard applicable to this Motion, the same result should follow and the Motion should be denied. *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2016 WL 6584482, at *2 (S.D.N.Y. Nov. 7, 2016) ("many courts have recognized that while the procedural vehicles of a motion to amend and a motion to dismiss are distinct, they nevertheless operate under the same standard").

Defendants ignore the Court's previous decision and assert in the Motion that the complaint "fails to plead facts showing that the policy substantially burdens the exercise of religion." (Motion at 27.) This Court previously held that Dr. Sabir "stated a plausible claim that the group prayer policy at FCI Danbury substantially burdens his ability to practice his Muslim religion." *Sabir v. Williams*, 2017 WL 6514694, *6. Defendants have not put forth any basis to disregard this Court's finding. Moreover, as this Court noted in its earlier decision in this case, the Second Circuit has "expressed doubt as to whether" a prisoner must show "at a threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Sabir v. Williams*, 2017 WL 6514694, *5 (citing *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014)).

Defendants' contention that "inmates of all faiths are afforded multiple avenues for participating in congregate prayer and worship" (*see* Motion at 27) raises questions of fact that are of no consequence at the pleading stage. It is directly contrary to the allegations in the Second Amended Complaint, which this Court must accept as true at this stage. Even if true, it does not change the fact that Plaintiffs' right to exercise their religion freely is substantially

5

burdened by the enforcement of the Policy. Due to Defendants' enforcement of the Policy, Plaintiffs are required to modify their behavior by conducting their daily prayers by themselves or with only one other Muslim inmate, notwithstanding the presence of other Muslin inmates within FCI Danbury. The accommodation mentioned by Defendants—use of the chapel—was specifically alleged to be inadequate in Plaintiffs' Second Amended Complaint. (Compl. ¶ 3). The facts as alleged in the Second Amended Complaint demonstrate that Plaintiffs' ability to adhere to their religious beliefs is substantially burdened by the enforcement of the Policy in violation of RFRA and the Free Exercise Clause. *See Sabir*, 2017 WL 6514694, at *4-5.

Defendants misconstrue the Second Amended Complaint when they claim that Plaintiffs "do not allege that they actually find themselves in a group of more than two Muslims at a time of required prayer." (Motion at 26.) Plaintiffs have adequately alleged that they have the opportunity for group prayer and that the Policy itself is what has prevented them from engaging in it. As Defendants themselves note, Dr. Sabir was threatened with discipline for praying in congregation with two other individuals, an event that he fully grieved and which has formed the basis of all of his complaints. (Motion at 26 (citing Compl. ¶ 35).)[3] Both Plaintiffs have alleged that they have refrained from praying in congregation out of fear of discipline pursuant the Policy. (Compl. ¶¶ 41, 43.) On a motion to dismiss, where the Court must draw all inferences in favor of the plaintiff, these allegations are more than sufficient to allege that Plaintiffs find themselves in a group of more than two Muslims at prayer time.

---

3. Defendants also note that "the reason for [Dr. Sabir's] being in a group at the time of prayer [in 2014] is not described in the complaint." (Motion at 26.) Defendants fail to explain why Dr. Sabir's reason for being in a group would be relevant to whether or not the Policy imposes a substantial burden on Plaintiffs' religious activity.

6

Plaintiffs' claims against Defendants Williams and Hurwitz in their official capacities should be permitted to proceed again for the same reasons cited by this Court in its previous decision.

## II. PLAINTIFFS ARE ENTITLED TO DAMAGES UNDER RFRA.

In the Second Amended Complaint, Plaintiffs seek damages against the Wardens in their individual capacities arising out of the violation of RFRA. (Compl. ¶¶ 58-60.) The Second Circuit recently affirmed that "RFRA authorizes the recovery of money damages against federal officers sued in their individual capacities." *Tanvir*, 894 F.3d at 463. Defendants present no argument to the contrary. Accordingly, Plaintiffs need not, and do not, look to *Bivens* to seek damages.

## III. RESOLUTION OF DEFENDANTS' QUALIFIED IMMUNITY DEFENSE IS PREMATURE.

As a threshold matter, Defendants' qualified immunity defense is premature and would be best decided at a later stage in the litigation. Because "the details of the alleged deprivations are more fully developed" on a motion for summary judgment, qualified immunity is "often best decided" at that later stage of litigation. *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013); *see also King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999). Here, where the Defendants have asked this Court to consider their qualified immunity defense on a motion to dismiss, their argument is subject to "the more stringent standard applicable to this procedural route," and Plaintiffs are "entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

## IV. DEFENDANTS WILLIAMS AND QUAY ARE NOT PROTECTED BY QUALIFIED IMMUNITY.

Qualified immunity only protects government officials from a suit seeking damages where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). At the time the Wardens enforced the Policy, First Amendment and RFRA principles protecting the free exercise of religion were clearly established and rendered Defendants' conduct objectively unreasonable. *See Salahuddin v. Goord*, 467 F.3d 263, 275–76 (2d Cir. 2006) ("Qualified immunity is not appropriate at this stage because it was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' right to religious exercise without some justification.").[4]

### A. Defendants Violated Plaintiffs' Clearly Established Constitutional and Statutory Rights

By arguing that the law governing Plaintiffs' claims was not clearly established, Defendants take an extremely narrow view of Plaintiffs' claims, arguing that "there is no law clearly establishing a right to pray in all areas of a federal prison 'with the maximum number of practicing Muslims possible'" (Motion at 16.) Defendants' narrow framing of Plaintiffs' claims is contrary to the Supreme Court's guidance that a plaintiff need not show that "the very action in question has previously been held unlawful;" it is enough "to say that in light of pre-existing law the unlawfulness must be apparent." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted). The Court should reject Defendants' attempt to "[c]haracterize[] the

---

4. In a footnote, Defendants argue that they are entitled to qualified immunity because it was not clearly established that RFRA authorized damages against personal-capacity defendants. (Motion at 19 n.6.) "Arguments made only in a footnote are generally deemed to be waived." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (citing *City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006)). In any event, Defendants' cited cases do not support immunity where the availability of a remedy was not clearly established.

8

right too narrowly to the facts of the case." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2d Cir. 2001).[5]

Here, accepting the allegations in the Second Amended Complaint as true, Plaintiffs' allegations demonstrate a violation of Plaintiffs' constitutional and statutory rights. The rights in question—Plaintiffs' rights to exercise their religion in accordance with their sincerely held religious belief free of substantial burdens *without some justification*—were undoubtedly clearly established. *See Salahuddin*, 467 F.3d at 275–76 ("Qualified immunity is not appropriate at this stage because it was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' right to religious exercise without some justification.").

Here, the Wardens were on notice that substantially burdening Plaintiffs' religion without justification could violate Plaintiffs' clearly-established constitutional and statutory rights. Nonetheless, the Wardens enforced the Policy effectively banning group prayer in all areas of the prison (except the chapel, which is infrequently available) without justification and without employing the least restrictive means. Plaintiffs allege facts in the Second Amended Complaint that there could be no legitimate penological interest in restricting prayer to groups of two or less where the Wardens have not otherwise limited gatherings of three or more inmates at FCI Danbury and arbitrarily enforce the Policy even with respect to prayer. Defendants do not even purport to identify a legitimate penological interest justifying the Policy in their Motion.[6] The

---

5. The Second Circuit has reversed lower court decisions that have construed a right too narrowly and therefore erroneously granted qualified immunity. *See Johnson*, 239 F.3d at 253 (claims asserting a right "'not to be struck by a teacher' construes the right too narrowly"); *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir. 1998) (district court's description of issue as "right to be free from crumbling asbestos" was overly restrictive when a plaintiff alleged placement in unconstitutional prison conditions).

6. The closest Defendants come to identifying a legitimate penological interest is arguing that this Court "'owe[s] prison officials substantial deference' in determining how best to manage their institutions." (Motion at 20 (quoting *Chatin v. Coombe*, 186 F.3d 82, 89-90 (2d Cir. 1999).) The Supreme Court has made clear that RFRA "does not permit . . . unquestioning deference" and "it is the obligation of the courts to consider whether

9

complete lack of justification for the Wardens' actions violates Plaintiffs' clearly established statutory and constitutional rights. *See Hammock v. Pierce*, No. 15-CV-09052, 2018 WL 2108244, at *5 (S.D.N.Y. May 7, 2018) (adhering to the *Salahuddin* formulation of a clearly-established right and denying qualified immunity where defendants "provide no substantive reason" why religious restriction was implemented); *Lindh v. Warden, Fed. Corr. Inst., Terre Haute*, No. 09-cv-00215, 2013 WL 139699, at *10 (S.D. Ind. Jan. 11, 2013) (holding that a policy prohibiting daily group prayer by Muslim inmates violates RFRA).

Plaintiffs' rights here are thus clearly established even though no Supreme Court or Second Circuit case has specifically recognized a right to group prayer under Plaintiffs' circumstances. The Northern District of New York rejected an argument similar to Defendants' argument in 2013. *See Williams v. Leonard*, No. 11-CV-1158, 2013 WL 5466191 (N.D.N.Y. Sept. 30, 2013). The court denied a motion to dismiss based on qualified immunity in a free exercise challenge to a prison policy requiring pants to extend below the ankle. *Id.* at *4. The court held that "even though there are no cases from the Second Circuit or Supreme Court that specifically address whether a Muslim inmate may wear his pants at a particular length," the unlawfulness of the policy would have been apparent to the defendants because it "substantially burdened his right to religious exercise without justification." *Id*. (citing *Salahuddin*, 467 F.3d at 275-76). The court noted that, while the defendants may ultimately be able to prove they are entitled to qualified immunity, "at this stage of the litigation, existing factual questions" precluded such a holding. *Id*.

---

exceptions [from a prison policy] are required under the test set forth by Congress." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015). "That test requires [a prison] not merely to explain why it denied the exemption but to prove that denying the exemption is the least restrictive means of further a compelling governmental interest." *Id*. Defendants have not even attempted to meet that burden in their Motion.

10

It is, of course, a question of fact not suitable for resolution on a motion to dismiss whether Plaintiffs were afforded meaningful opportunities for group prayer and whether the Wardens had a legitimate penological interest in enforcing the policy. Defendants' assertion at this point in the proceedings that "the policy afforded meaningful opportunities for group prayer throughout the prison complex" (Motion at 19) is premature. Plaintiffs have alleged that they did not have meaningful opportunities for group prayer as required by their religion. (*See* Compl. ¶¶ 3, 32.) Likewise, Plaintiffs have clearly asserted that the Wardens did not have a penological interest in enforcing the policy. (*See id*. ¶ 33.) On a motion to dismiss, Plaintiffs merely need to plead facts that allow the Court to make a reasonable inference that the defendant is liable.

Notably, each of the cases Defendants rely on were decided on a full factual record at the summary judgment stage. *See Shabazz v. Coughlin*, 852 F.2d 697 (2d Cir. 1988); *Johnson v. Killian*, No. 07-cv-6641, 2013 WL 103166 (S.D.N.Y. Jan. 9, 2013); *Smith v. Artus*, No. 9:07-CV-1150, 2010 WL 3910086 (N.D.N.Y. Sept. 30, 2010), *vacated in part on other grounds*, 522 F. App'x 82 (2d Cir. 2013); *Vega v. Lantz*, No. 04-cv-1215, 2009 WL 3157586 (D. Conn. Sept. 25, 2009); *Sweeper v. Taylor*, No. 06-cv-379, 2009 WL 815911 (N.D.N.Y. March 27, 2009); *Withrow v. Bartlett*, 15 F. Supp. 2d 292 (W.D.N.Y. 1998). In those cases, defendants developed through discovery facts to demonstrate that their actions were related to a legitimate penological interest. *See, e.g., Johnson v. Killian*, 2013 WL 103166 (defendants demonstrated (i) a documented history of security and staffing concerns and (ii) that they allowed inmates to engage in group prayer in designated areas); *Vega v. Lantz*, 2009 WL 3157586 (defendants demonstrated history of group prayer at that facility creating "an alternate authority structure"). Here, the Wardens have not done so. Plaintiffs have alleged that the Policy lacks any such legitimate penological interest; as in *Williams*, those allegations control at this stage of the case.

### B.      Wardens' Conduct Was Not Objectively Reasonable

Plaintiffs' damages claims also cannot be barred, as Defendants argue, by a finding that the Wardens were "objectively reasonable." As an initial matter, the "clearly established" and "objective reasonableness" inquiries are not distinct. *See Nagle v. Marron*, 663 F.3d 100, 115 (2d Cir. 2011) ("[A]n official who violates clearly established law necessarily lacks an objectively reasonable belief that his conduct was lawful.") (internal quotation marks omitted); *Walczyk v. Rio*, 496 F.3d 139, 166, 169 (2d Cir. 2007) (Sotomayor, J., concurring) ("By splitting the 'relevant, dispositive inquiry' in two, we erect an additional hurdle to civil rights claims against public officials that has no basis in Supreme Court precedent . . . [and] give defendants a second bite at the immunity apple."' (citations omitted)).

Even if the inquiries were distinct, the Wardens' actions were objectively unreasonable. As pled in Second Amended Complaint, Defendants imposed unnecessary burdens on Plaintiffs' sincerely held religious beliefs without justification. Indeed, they did so inconsistently and at the same time authorized other group activities, like athletics and card games. Given Defendants' failure to justify the inconsistent application of the Policy or sufficiently explain the penological interests for its enforcement, this "Court cannot hold that a reasonable prison official would have understood such treatment to be consistent with the First Amendment." *Wright v. Stallone*, No. 09-cv-0487, 2018 WL 671256, at *6 (N.D.N.Y. Jan. 31, 2018).

In *Wright*, the prison official defendants treated two prisoners inconsistently: one was permitted to pray demonstratively in the prison yard, while another prisoner was not. *Id*. at *5. The court found that, even though "no court has clearly established that prisoners have a right to pray demonstrably in the recreation yard by oneself or in small groups," the defendants were not entitled to qualified immunity because "[t]his inconsistent treatment should have raised significant concerns among prison officials regarding the alleged penological interests supporting

12

the policy of banning individual, demonstrable prayer." *Id.* Accordingly, the court denied the defendants' motion to dismiss on qualified immunity, holding that no "reasonable prison official would have understood such treatment to be consistent with the First Amendment." *Id.* at *6. Because Plaintiffs have alleged the unjustified inconsistent treatment of group activities in their Second Amended Complaint, this Court should likewise find that no reasonable prison official would have maintained the Policy.

### C. Plaintiffs' Allegations More Than Plausibly Support the Inference That Defendants Quay and Williams Were Personally Involved.

The Wardens' argument that they were not "personally involved" in the implementation or enforcement of the Policy (*see* Motion at 21-22) should be rejected. In the Second Circuit, a plaintiff may establish a defendant's personal involvement in a violation of rights by showing any of the following so-called "*Colon* factors":

> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or
> (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016).[7]

The Second Amended Complaint makes clear that, among other things, (i) Quay was the warden at the time that Dr. Sabir filed his Request for Administrative Remedy, and Quay

---

7. In a footnote, Defendants argue that the *Colon* factors are no longer good law following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Motion at 25 n.7.) "Arguments made only in a footnote are generally deemed to be waived." *Scott*, 315 F.R.D. at 45 (citing *City of Syracuse*, 464 F.3d at 308. In any event, the Second Circuit has adhered to the *Colon* factors as recently as 2016. *See Warren*, 823 F.3d at 136.

provided a response in support of the Policy on January 27, 2015 (*see* Compl. Ex. B), (ii) Williams was the warden at the time Mr. Conyers filed his Request for Administrative Remedy, and Williams provided a response in support of the Policy on May 19, 2017 (*see* Compl. Ex. C), and (iii) Williams was the warden at FCI Danbury in the spring of 2017, when a flyer was circulated to incarcerated persons which cited to the Policy and stated that "group prayer of 3 or more is restricted to the Chapel" and "Staff Will be Enforcing This Policy" (*see* Compl. ¶ 46). When viewed as a whole, the allegations in the Second Amended Complaint support the more than plausible inference that the foreseeable consequence of the Wardens' conduct of leaving the Policy in place after receiving notice that the Policy violated Plaintiffs' rights led to Plaintiffs' damages.

The Second Circuit has held that, at the initial pleading stage, an inmate's complaint may survive a motion to dismiss based on a defendant's lack of personal involvement if the inmate's complaint "contain[s] factual allegations indicating that [a l]etter was sent to [an official] at an appropriate address and by appropriate means—that the [official] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions by which [the inmate] complained." *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). District courts in the Second Circuit have held that an official who personally denied a prisoner's grievance is thereby personally involved with the deprivation of the plaintiff's rights, particularly where the grievance "complained of 'ongoing' violations which [defendant] could 'remedy.'" *Allah v. Annucci*, No. 16-cv-1841, 2018 WL 4571679, at *7-9 (S.D.N.Y. Sept. 24, 2018) (collecting cases).[8]

---

8. Defendants cite to an earlier opinion in *Allah v. Annucci* to argue that a "theory of liability . . . grounded in the mere fact that Defendants were in charge of the prison" is insufficient to establish personal involvement in the violation of the plaintiff's rights. (Motion at 23 (quoting *Allah v. Annucci*, No. 16-cv-1841, 2017 WL 3972517, at *8 (S.D.N.Y. Sept. 7, 2017)). The court in that case did, however, ultimately find the plaintiff alleged personal involvement where, as here, plaintiff added allegations that the prison official had personally denied his grievance. 2018 WL 4571679, at *8.

14

Accordingly, the allegations in the Second Amended Complaint are sufficient to defeat the Wardens' motion to dismiss based on lack of personal involvement.

As the Wardens cannot satisfy their burden of demonstrating that they are entitled to qualified immunity, Plaintiffs should be afforded the opportunity to seek further evidence in support of their claims. *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (qualified immunity is an affirmative defense, and, as such, defendants bear the burden of proving that the privilege applies).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to dismiss.

Dated: November 2, 2018

>Respectfully submitted,
>
>By: */s/ Matthew W. Callahan*
>Johnathan J. Smith (No. phv09573)
>Matthew W. Callahan (No. phv09574)
>MUSLIM ADVOCATES
>P.O. Box 34440
>Washington, DC 20043
>Tel.: (202) 897-2622
>Fax: (202 508-1007
>Email: johnathan@muslimadvocates.org
>           matthew@muslimadvocates.org
>
>-and-
>
>Renee C. Redman (No. ct16604)
>LAW OFFICE OF RENEE C. REDMAN LLC
>110 Whitney Avenue
>New Haven, Connecticut 06510
>Tel.: (475) 238-6671
>Fax: (475) 238-6679
>Email: renee@reneeredmanlaw.com
>
>*Attorneys for Plaintiffs*